UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

___

In re:  Case No. 10-48851
Chapter 13

Lynn Marie Ogard,

***OBJECTION TO CONFIRMATION***

Debtor(s).

___

TO: Debtor(s) and Attorney for Debtor(s); Jasmine Z. Keller, Chapter 13 Trustee; U.S. Trustee; and other parties in interest.

1. Bremer Bank, N.A., a secured creditor of Debtor(s), by its undersigned attorney, makes this objection to the confirmation of the proposed plan of the Debtor(s).

2. This objection is filed pursuant to Fed. R. Bankr. P. 3020(b) and Bremer Bank, N.A. requests this Court to enter an order denying confirmation of Debtor(s)' proposed Chapter 13 plan (the "Plan"). This Court has jurisdiction over this motion pursuant to 28 U.S.C. Sec. 1334(a) and 157(a), 11 U.S.C. §1325 and applicable rules. This is a core proceeding.

3. Hearing on confirmation of the Plan is scheduled for **10:30 am** on **Thursday, February 3, 2011**, before the Honorable Nancy C. Dreher, in Courtroom No. 7 West, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, or as soon thereafter as counsel can be heard.

4. The petition commencing this Chapter 13 case was filed on November 30, 2010 and the case is now pending in this Court.

5. Bremer Bank, N.A. holds a valid, perfected interest in a Real Estate Located in Minneapolis, MN, (the "Property"). The value of the Property is $267,500.00.

6. Copies of Bremer Bank, N.A.'s agreement with Debtor(s) (the "Contract") and evidence of perfection of Bremer Bank, N.A.'s interest in the Property are attached hereto as Exhibits A and B and incorporated herein by reference.

1

7. The balance due on Bremer Bank, N.A.'s second mortgage as of the petition date totals $29,221.87 together with interest accruing at the contract rate of 5.5%. According to Debtor(s)' Schedule D, CitiMortgage holds the first mortgage in the amount of $214,135.00. The fair market value of the Property is $267,500.00. Accordingly, the claim of Bremer Bank, N.A. should be treated as secured to the extent of $29,221.87.

8. The Plan, however, provides for (i) Bremer Bank, N.A.'s secured claim of $27,500.00 with interest accruing at 5.5%; (ii) total payment on Bremer Bank, N.A.'s secured claim of $30,361.44; and (iii) monthly payments of $706.08 commencing in month 6 for 43 months.

9. The Plan fails to provide for equal monthly payments post-confirmation as required by 11 U.S.C §1325(a)(5)(B)(iii)(I). The Plan indicates the monthly payments may be delayed while the Debtor's attorney's fees are paid on a priority basis. The Plan must provide for the post-confirmation disbursements to Bremer Bank, N.A. to commence the month immediately following confirmation without any delay for payment of Debtor's attorney's fees.

10. The Plan fails to satisfy Bremer Bank, N.A.'s secured claim plus interest utilizing the payments set forth by Debtor(s). Accordingly, the Plan does not meet the confirmation requisites and should be denied.

11. The Plan does not comply with the provisions of Chapter 13.

12. The Plan does not provide Bremer Bank, N.A. with adequate protection of its interest in the Property.

13. Movant gives notice that it may, if necessary, call Amie Cobb or another representative of Bremer Bank, N.A. to testify at the hearing.

14. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE.

WHEREFORE, Bremer Bank, N.A. respectfully requests this Court to enter an order denying confirmation of the Debtor(s)' proposed plan and such other further relief as is just and equitable.

Dated: January 26, 2011                    STEWART, ZLIMEN & JUNGERS

                                          By    /e/ Bradley J. Halberstadt
                                             Bradley J. Halberstadt (#215296)
                                             Attorneys for Movant
                                             2277 Highway 36 West, Suite 100
                                             Roseville, MN  55113
                                             (612) 870-4100

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  Case No. 10-48851
  Chapter 13
Lynn Marie Ogard,

    Debtor(s).

## VERIFICATION

I, Amie Cobb, a Bankruptcy Specialist of Bremer Bank, N.A. declare under penalty of perjury that the facts contained in the Objection to Confirmation are true and correct to the best of my knowledge, information and belief.

Dated: 1-24-11

                Amie Cobb
                Bankruptcy Specialist
                Bremer Bank, N.A.

# HOME EQUITY CREDITLINE AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $27,500.00 | 11-15-2004 | 11-15-2009 | | 30 / 3801 | | 892 | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** LYNN M OGARD
4637 SOUTH YORK AVENUE
MINNEAPOLIS, MN 55410

**Lender:** BREMER BANK, NATIONAL ASSOCIATION
Bremer Mortgage Indirect
633 South Concord
South St Paul, MN 55075

**CREDIT LIMIT: $27,500.00**  **DATE OF AGREEMENT: November 15, 2004**

**Introduction.** This Home Equity CreditLine Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through BREMER BANK, NATIONAL ASSOCIATION. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean BREMER BANK, NATIONAL ASSOCIATION. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay BREMER BANK, NATIONAL ASSOCIATION, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Mortgage" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until November 15, 2009 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Minnesota, following the expiration of the right to cancel, the perfection of the Mortgage, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: anytime up to, but not exceeding 60 months from the loan date. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued **FINANCE CHARGES** or $50.00, whichever is greater. You will make 59 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. **Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.**

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to unpaid principal; and then to late charges and other charges.

**Receipt of Payments.** Payments will be automatically debited from a demand deposit account with payments applied first to interest and any excess to principal.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Twenty-seven Thousand Five Hundred & 00/100 Dollars ($27,500.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Mortgage covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Mortgage or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below an the Mortgage for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

    **Credit Line Checks.** Writing a preprinted "Home Equity Check" that we will supply to you.

    **Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

    **Overdrafts.** Writing a check on your designated checking account with us in excess of the available collected balance in the account.

    **Requests By Mail.** Requesting an advance by mail.

    **Requests In Person.** Requesting a credit advance in person at any of our authorized locations.

**Requesting via eBank.** Requesting an advance via eBank.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Home Equity Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Home Equity Check.

**Post-dated Checks.** Your Home Equity Check is post-dated. If a post-dated Home Equity Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Home Equity Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Home Equity Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Home Equity Check.

**Transaction Violation.** Your Home Equity Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Home Equity Check.

If we pay any Home Equity Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Home Equity Check. The Home Equity Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Home Equity Checks along with your periodic billing statements; however, your use of each Home Equity Check will be reflected on your periodic statement as a credit advance. We do not "certify" Home Equity Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Home Equity Check, Telephone Request, Overdraft, Request By Mail, In Person Request and Requesting via eBank Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Home Equity Checks, requesting an advance by telephone, writing a check in excess of your checking account balance, requesting an advance by mail, requesting an advance in person and accessing by other methods.

**Other Transaction Requirements.** If tied to a Bremer Bank National Association Demand Deposit Account or a Bremer Bank National Association Creditline Account, the amount of the advance(s) will be the greater of $500.00 or the amount of the check if the check is in excess of $500.00

**Authorized Signers.** The words "Authorized Signer" on Home Equity Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Home Equity Checks.** If you lose your Home Equity Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (800) 908-2265. You also can notify us at Notification 8555 Eagle Point Blvd, Lake Elmo , MN 55042.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Mortgage, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us the "daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent Index which is the prime rate as published daily in the Wall Street Journal (the "Index"). We will use the most recent Index value available to us as of the date of any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect daily. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the lesser of 18.000% or the maximum rate allowed by applicable law. Today the Index is 5.000% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL

PERCENTAGE RATE on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 2.250% | 7.250% | 0.01986% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line described below:

**Returned Items.** You may be charged $15.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Late Charge.** Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you 5.000% of the unpaid amount of the payment or $50.00, whichever is less.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our reasonable attorneys' fees and our legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Home Equity Checks and any other access devices. Any use of Home Equity Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Home Equity Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Home Equity Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes 'payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BREMER BANK, NATIONAL ASSOCIATION; Bremer Mortgage Indirect; 633 South Concord ; South St Paul, MN 55075.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option. You agree to reimburse us for any costs we incur in connection with the annual review. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Mortgage. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bremer Service Center 8555 Eagle Point Boulevard Lake Elmo, MN 55042

**Jury Waiver.** We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other.

**Collection of Satisfaction Fee.** I agree to the payment of a satisfaction fee to be collected at the time of loan payoff. This fee will be used to record the satisfaction of your mortgage with lender.

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Minnesota. This Agreement has been accepted by us in the State of Minnesota.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Mortgage, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Mortgage or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also agree that you have received a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

**Section Disclosure.** This loan is made under Minnesota Statutes, Section 47.59.

BORROWER:

X _____
LYNN M. OGARD

ACCEPTED: BREMER BANK, NATIONAL ASSOCIATION

By: _____
Authorized Signer

Effective Disbursement Date: 11-19-04

Digital Images Provided By U. S. Recordings / © 2010 - U. S. Recordings - All Rights Reserved



Doc No 8494134  12/17/2004 03:23 PM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
Deputy 59                    TransID 81777
Fees
$5.00 ConsFee
$15.00 DOC
$4.50 SUR
$24.50 Total

# MORTGAGE

**RECORDATION REQUESTED BY:**
~~BREMER BANK, NATIONAL ASSOCIATION~~
~~Bremer Mortgage Indirect~~
~~633 South Concord~~
~~South St Paul, MN 55075~~       **Excelsior Title**

~~WHEN RECORDED MAIL TO:~~
~~Bremer Service Center~~
~~MN-001-24FC~~
~~8555 Eagle Point Boulevard~~
~~Lake Elmo, MN 55042~~

**SEND TAX NOTICES TO:**
LYNN M OGARD
4637 SOUTH YORK AVENUE
MINNEAPOLIS, MN 55410

Henn Co MRT
SMT    # 9069
12/15/2004
Paid  $66.00

---

**MAXIMUM LIEN. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THE MAXIMUM PRINCIPAL AMOUNT OF THE LINE OF CREDIT SECURED BY THIS MORTGAGE AT ANY ONE TIME IS $27,500.00.**

THIS MORTGAGE dated November 15, 2004, is made and executed between LYNN M OGARD, whose address is 4637 SOUTH YORK AVENUE, MINNEAPOLIS, MN 55410; a single person(s) (referred to below as "Grantor") and BREMER BANK, NATIONAL ASSOCIATION, whose address is 633 South Concord , South St Paul, MN 55075 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and conveys to Lender, with power of sale, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in HENNEPIN County, State of Minnesota:**

   **LOT 19, BLOCK 18, SECOND DIVISION, REMINGTON PARK, HENNEPIN COUNTY, MINNESOTA.**

The Real Property or its address is commonly known as 4637 SOUTH YORK AVENUE, MINNEAPOLIS, MN 55410. The Real Property tax identification number is 17 028 24 21 0018

REVOLVING LINE OF CREDIT. This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor up to a maximum principal amount of $27,500.00 so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Mortgage and any intermediate balance.

THIS MORTGAGE, INCLUDING THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A) PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA
_____

In re:                                                                    Case No.10-48851
                                                                          Chapter 13
Lynn Marie Ogard,
                                                          *MEMORANDUM IN SUPPORT OF*
          Debtor(s).                                      *OBJECTION TO CONFIRMATION*
_____

      Bremer Bank, N.A. submits this memorandum of law in support of its objection to confirmation in the above-entitled matter.

## FACTS

      Bremer Bank, N.A. holds a valid, perfected interest in a Real Estate Located in Minneapolis, MN, Property identification number  (the "Property").

      The balance due on Bremer Bank, N.A.'s second mortgage as of the petition date totals $29,221.87 together with interest accruing at the contract rate of 5.5%.  According to Debtor(s)' Schedule D, CitiMortgage holds the first mortgage in the amount of $214,135.00.  The fair market value of the Property is $267,500.00.  Accordingly, the claim of Bremer Bank, N.A. should be treated as secured to the extent of $29,221.87.

      The Plan, however, provides for (i) Bremer Bank, N.A.'s secured claim of $27,500.00 with interest accruing at 5.5%; (ii) total payment on Bremer Bank, N.A.'s secured claim of $30,361.44; and (iii) monthly payments of $706.08 commencing in month 6 for 43 months.

      The Plan fails to provide for equal monthly payments post-confirmation as required by 11 U.S.C §1325(a)(5)(B)(iii)(I).

1

## DISCUSSION

Pursuant to 11 U.S.C. §1325(a)(5), a plan must distribute deferred cash payments equal to the present value of the secured claim. *Rake v. Wade*, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In this case, the Debtor(s) have proposed payments that do not satisfy Bremer Bank, N.A.'s secured claim plus a reasonable interest rate. The Plan fails to provide for equal monthly payments post-confirmation as required by 11 U.S.C §1325(a)(5)(B)(iii)(I). The Plan indicates the monthly payments may be delayed while the Debtor's attorney's fees are paid on a priority basis. The Plan must provide for the post-confirmation disbursements to Bremer Bank, N.A. to commence the month immediately following confirmation without any delay for payment of Debtor's attorney's fees. Accordingly, the Plan does not meet the confirmation requisites and should be denied.

## CONCLUSION

For all of the reasons set forth herein, Bremer Bank, N.A. respectfully requests that the Court deny confirmation of Debtor(s)' Chapter 13 Plan.


Dated: January 26, 2011                    STEWART, ZLIMEN & JUNGERS

By       /e/ Bradley J. Halberstadt
   Bradley J. Halberstadt (#215296)
   Attorneys for Movant
   2277 Highway 36 West, Suite 100
   Roseville, MN  55113
   (612) 870-4100

|  | U.S. BANKRUPTCY COURT |
|---|---|
|  | DISTRICT OF MINNESOTA |

In re:

Lynn Marie Ogard

UNSWORN DECLARATION

     Debtor(s).

FOR PROOF OF SERVICE

Bky. No. 10-48851

Bradley J. Halberstadt, agent of Stewart, Zlimen & Jungers, attorney(s) licensed to practice law in this court, with office address of with office address of 2277 Highway 36 West, Suite 100, Roseville, MN 55113, declares that on the date set forth below, I served the annexed **Objection to Confirmation** upon each of the entities named below by electronic transmission or by mailing to each of them a copy thereof by enclosing same in an envelope with first class mail postage prepaid and depositing same in the post office at Roseville, Minnesota addressed to each of them as follows:

---

| United States Trustee | (Attorney for Debtor(s)) | (Trustee) |
|---|---|---|
| 300 South 4th Street, Room 1015 | Craig A Cook | Jasmine Z. Keller |
| Minneapolis, MN 55415 | Midwest Legal Counsel | Chapter 13 Trustee |
|  | 1821 University Ave Ste S217 | 12 S 6th St RM 310 |
|  | St Paul, MN 55104 | Minneapolis, MN 55402 |

(Debtor(s))
Lynn Marie Ogard
4637 York Ave S
Minneapolis, MN 55410

---

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: <u>January 26, 2011</u>     Signed: <u> /e/ Bradley J. Halberstadt </u>

---

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                     Case No. 10-48851
Chapter 13

Lynn Marie Ogard,

***ORDER***

       Debtor.

This matter came before this Court for confirmation of the Chapter 13 plan of reorganization of Debtor(s). Based upon all the files and records, the Court makes this Order pursuant to the Federal Rules of Bankruptcy Procedure.

IT IS HEREBY ORDERED, That confirmation of the Chapter 13 plan of Debtor(s) is denied.

Dated: _____          _____
                                                            Nancy C. Dreher
                                                           United States Bankruptcy Judge

456711